No. 25,457.

THE STATE OF KANSAS, ex rel. JUSTUS N. BAIRD, County Attorney of Wyandotte County, *Appellee,* v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

RAILROADS—*Statutory Requirement to Stop Passenger Trains in Certain Cities —Statute Superseded by Public Utilities Act.* The statute of 1905, relating to stopping passenger trains and building passenger depots in certain cities (R. S. 66-2,103, 66-2,104, 66-2,105), has been superseded by the public utilities act of 1911.

Appeal from Wyandotte district court, division No. 3; WILLIAM H. Mc-CAMISH, judge. Opinion filed November 8, 1924. Reversed.

*William R. Smith, Owen J. Wood,* and *Alfred A. Scott,* all of Topeka, for the appellant.

*Justus N. Baird,* county attorney, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one of mandamus to compel compliance with a statute enacted in 1905, relating to stopping passenger trains and building passenger depots in certain cities. A demurrer to the answer was sustained and defendant appeals.

The statute reads in part as follows:

"That every railroad corporation which is now or may hereafter be engaged in the transportation of passengers or property in this state shall stop all of its regular passenger trains carrying passengers at the county seat of each and every county through which the same shall be operated, where said county seat is a city of the first class having a population of not less than fifty thousand, and shall at such county seat establish a station, and erect, build and maintain, either jointly with some other railroad company or separately, a depot or passenger house and waiting room or rooms sufficient to comfortably accommodate all passengers awaiting the arrival or departure of trains at such county seat. . . .

"That every railroad corporation which shall fail, neglect or refuse to comply with the requirements of the preceding section of this act from and after the

The State, *ex rel.*, v. Railway Co.

1st day of January, 1906, shall, for each day said corporation fails, neglects or refuses to comply therewith after said day, forfeit and pay the sum of fifty dollars. . . .

"That every railroad corporation which shall fail, neglect or refuse to comply with the provisions of this act from and after the 1st day of January, 1906, may be compelled by writ of mandamus to perform the duties imposed upon it by this act, in a suit to be brought in the name of the state of Kansas in any court of competent jurisdiction; . . ." (R. S. 66-2,103, 66-2,104, 66-2,105.)

The answer was that the statute has been repealed by the public utilities act, and that plaintiff has an adequate remedy by invoking action of the public utilities commission. The state contends that the statute gave definite expression to the legislative will respecting a proper subject of regulation, that a specific mode of enforcing the regulation was provided, and that the public utilities act itself preserved rights and remedies under existing laws. The specific provision of the public utilities act referred to follows:

"The rights and remedies given by this act shall be construed as cumulative of all other laws in force in this state relating to common carriers and public utilities, and shall not repeal any other remedies or rights now existing in this state for the enforcement of the duties and obligations of public utilities and common carriers or the rights of the public utilities commission to regulate and control the same except where inconsistent with the provisions of this act." (R. S. 66-140.)

The question, therefore, is whether the statute of 1905 is inconsistent with the public utilities act of 1911.

By the public utilties act regulation of public utilities was provided for in a comprehensive scheme, which included regulation of railroads. Before that the subject had been in a state of nebulosity, with a sort of nucleus in the form of a board of railroad commissioners. Generally, railroads were regulated by legislative fiat, enforceable by fine and by issuance of mandatory writs. Development of the modern method of regulation is sketched in the opinions in *The State, ex rel., v. Postal Telegraph Co.*, 96 Kan. 298, 150 Pac. 544, and *Telephone Association v. Telephone Co.*, 107 Kan. 169, 173, 190 Pac. 747. The conclusion reached in the latter case was that any controversy which naturally falls within the scope of the jurisdiction of the public utilities commission must be adjusted by that tribunal.

The statute of 1905 is inconsistent with the public utilities act in several respects. The standard of regulation in the public utilities act is the lawful, practical standard of efficient and sufficient service.

Applied to passenger-train service, the standard requires facilities reasonably adequate. The act of 1905 contains a flat requirement that all passenger trains, whether moving in state or interstate commerce, shall be stopped, and the requirement may or may not correspond to the needs of the community to be served. Under the public utilities act the question as to what facilities will be reasonably adequate, and the question whether facilities furnished meet the standard, are always questions of fact, to be determined on investigation of the situation and circumstances. Investigations are conducted upon notice, findings are made, the orders based upon the findings are adapted to the situation and circumstances disclosed, and findings and orders are subject to review. Under the statute of 1905 nothing is open to inquiry except violation of the arbitrary requirements of the statute; and if violations be proved, the mandatory judgment must be in strict accordance with the statute. In the matter of station facilities mandamus is not a fit remedy, because none but a body similar to the public utilities commission is competent to deal with the subject. (*Telephone Association v. Telephone Co.*, 107 Kan. 169, 174, 190 Pac. 747.) The result is, there is no place in the scheme of the public utilities act for the act of 1905. The incongruity between the two statutes is too great to permit them to be recognized as *in pari materia*. The legislature could not have contemplated that the act of 1905 was within the purview of the saving clause of the public utilities act, and the court holds the earlier statute has been entirely superseded by the later one.

The judgment of the district court is reversed, and the cause is remanded with direction to carry the demurrer to the answer back to the petition, and to sustain the demurrer as so applied.